IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Maurice B.,               )<br>                                )<br>          Plaintiff,      )<br>                                )   Case No.: 19-cv-50009<br>     v.                        )<br>                                )   Magistrate Judge Margaret J. Schneider<br>Kilolo Kijakazi,          )<br>Commissioner of Social Security, [1]  )<br>                                )<br>          Defendant.   ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Maurice B. appeals a denial of disability insurance benefits. For the reasons set forth below, Plaintiff's motion for summary judgment [11] is denied and the Commissioner's motion for summary judgment [17] is granted.

### BACKGROUND

A. Procedural History

On April 6, 2016, Plaintiff Maurice B. ("Plaintiff") filed an application for Social Security disability insurance benefits and an application for supplemental security income under Titles II and XVI of the Social Security Act. R. 15. He alleged a disability beginning on January 31, 2016 and his date of last insured is September 30, 2017. R. 17. The Social Security Administration ("Commissioner") denied his applications initially on June 15, 2016 and upon reconsideration on September 20, 2016. R. 66-83, 86-111. Plaintiff filed a written request for a hearing on October 20, 2016. R. 142-43. On November 1, 2017, a hearing was held via videoconference by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared and testified. R. 31-61. Plaintiff was represented by counsel. An impartial vocational expert also appeared and testified. *Id.*

On February 20, 2018, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 15-26. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-8. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); docket entry [9]. Now before the Court are Plaintiff's motion for summary judgment [11] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for

---

[1] Kilolo Kijakazi has been substituted for former Commissioner of Social Security Andrew Saul. Fed. R. Civ. P. 25(d).

summary judgment [17].

    B.  Medical Background[2]

On February 6, 2016, Plaintiff suffered several injuries as a result of a moped accident. R. 291-96. He reported decreased range of motion, pain and tenderness in his right shoulder, knee, and ankle. Emergency department X-rays of Plaintiff's right knee revealed a lateral tibial plateau fracture. *Id.* Plaintiff was also diagnosed with a shoulder contusion, rib contusion and was given a knee immobilizer, crutches, and pain medication. *Id.* Four days later, Plaintiff followed up with a physician's assistant at OrthoIllinois for right shoulder pain he attributed to the moped accident. R. 359-62. At that time, X-rays of the shoulder noted AC joint space mildly narrowed with small inferior osteophytes and a question of a possible fracture. R. 360. Plaintiff also exhibited a reduced range of motion in his right shoulder, tenderness in his right shoulder, and 4/5 strength in his triceps. *Id.* The physician's assistant ordered an MRI on Plaintiff's right shoulder and provided Plaintiff with a sling. R. 361. On the same day, Plaintiff saw Dr. Jeffrey Earhart at OrthoIllinois for his right knee pain. R. 356-58. Swelling of the right knee was observed and Plaintiff complained of moderate pain. R. 356. Plaintiff was diagnosed with an unspecified fracture of his right tibia and was treated with a knee hinged brace and told to follow up in three weeks. R. 357. On March 2, 2016, Plaintiff underwent an MRI on his right shoulder. Plaintiff's PA noted in his report that while a fracture of the right shoulder was suspected, the MRI confirmed no fracture. R. 362. On March 8, 2016, Plaintiff was seen at OrthoIllinois for a follow up appointment to discuss the results of the MRI. The MRI, as analyzed by the radiologist, noted a SLAP type 2B tear associated with mild glenohumeral arthropathy. R. 344-47. At that visit, Plaintiff received a right shoulder joint injection. R. 346.

On March 8, 2016, Plaintiff saw PA Joseph Steiner for pain in his right shoulder. He had reduced range of motion in his cervical spine and shoulder, with 4/5 strength with external rotation in his subscapularis and 5/5 strength in his deltoid and supraspinatus muscles. R. 344-47. PA Steiner ordered an MRI of Plaintiff's cervical spine and gave him an injection in the right shoulder joint. R. 346. On April 5, 2016, Plaintiff followed up with a P.A. at OrthoIllinois. R. 338. He reported his right shoulder symptoms had improved since the injection. *Id.* Plaintiff was told his March 2016 MRI was consistent with cervical radiculopathy, disc herniations at C5-6 and C6-7 contributing to moderate to severe central canal and recess impingement and foraminal narrowing. R. 339-40. He was referred to Dr. Brain Braaksma, an orthopedic specialist. On April 8, 2016, Dr. Braaksma's PA (Mike McCormick) examined Plaintiff. R. 334-37. On May 26, 2016, Dr. Braaksma performed a fusion surgery on Plaintiff at C5-6 and C6-7. R. 501-503. At his 11-day post-op follow up appointment, Plaintiff was advised to continue wearing the C-collar and avoid lifting more than 10 pounds until he was 8 weeks post-surgery. R. 495-97.

At his July 2016 follow up appointment with PA McCormick, Plaintiff stated his pain continued at a 4/10 at rest or with activity. R. 564-66. He had a reduced range of motion in his neck and was tender to palpation of the paraspinal muscles in the cervical spine. R. 564-65. He had full strength in his upper extremities and X-rays showed his hardware intact. *Id.* Dr. Braaksma referred Plaintiff to physical therapy and to continue with pain medication. R. 565. On July 22,

---

[2] The Court summarizes Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history.

2016, Plaintiff followed up with Dr. Earhart for his right knee pain. R. 567-69. Plaintiff reported that his pain had increased and while he was able to bear weight on his knee, it would give out on him. R. 567. Dr. Earhard gave Plaintiff a cortisone injection in his right knee and pain medication. R. 568. On August 29, 2016, Plaintiff retuned to Dr. Braaksma reporting of pain of 7/10, but controlled with use of Aleve. He was instructed to continue with physical therapy. R. 561-63.

In October 2016, Plaintiff followed up with a re-check of his right knee. R. 555-57. He complained of swelling after walking and giving out as he walked down stairs. R. 555. At a November 2016 follow up appointment with Dr. Sean MacKenzie, Plaintiff had mild crepitations in this patellofemoral joint. R. 550-52. He displayed full range of motion upon extension and flexion. *Id.* In December 2016, Plaintiff began physical therapy for his right knee. R. 584-85.

Appointments with his primary care physician in 2017 reflected that Plaintiff managed his symptoms with over-the-counter pain medications but these medications did not resolve his pain. R. 667-709. In April 2017, Plaintiff's right knee was injured by a chainsaw. R. 678-86. Reduced range of motion and tenderness in the right knee was noted after the injury. R. 678. On May 31, 2017, Plaintiff was seen by a CRNA regarding his neck pain. R. 675-77. She adjusted Plaintiff's medications in an effort to manage his pain. *Id.* In July 2017, Plaintiff primary care physician noted Plaintiff was in no acute distress and had full range of motion in his neck and extremities. R. 664. He walked with a limp and wore a knee brace on his right knee. *Id.* Imaging studies showed questionable mild prepatellar bursitis. R. 630. He received a referral to see an orthopedic specialist for his knee pain. His knee and neck pain were managed with pain medication taken twice daily. Plaintiff reported significant improved pain control with no adverse side effects. R. 667-69. At his annual physical exam on July 11, 2017, Plaintiff did not report any complaints or concerns regarding his neck or knee pain. R. 664-66.

In June 2016, state-agency medical consultant Dr. Susan Soler reviewed Plaintiff's records and found that he retained the ability to perform light exertional work and could occasionally climb, kneel, crouch, and crawl. R. 70-72. She did not examine Plaintiff and did not review later submitted evidence. R. 68. State-agency consultant Dr. LaVerne Barnes reviewed Plaintiff's records in September 2016. R. 92-98. Dr. Barnes found similarly that Plaintiff could perform light exertional work with occasional climbing, kneeling, crouching, and crawling. *Id.* Dr. Barnes did not examine Plaintiff. R. 90.

### C. The ALJ's Decision

The ALJ analyzed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since January 31, 2016, when Plaintiff became disabled. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments from January 31, 2016 to September 30, 2017: degenerative disc disease of the cervical spine, status-post fusion and discectomy at C4-C7, and osteoarthritis of the right knee status-post lateral tibia plateau fracture. *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R.18. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404,

3

Subpart P, Appendix 1, from January 31, 2016 to September 30, 2017.

Before step four, the ALJ found that, from January 31, 2016 to September 30, 2017, Plaintiff had a residual functional capacity (RFC) to perform light work with the following exceptions: he could never climb ladders, ropes or scaffolds; he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and he could have occasional exposure to unprotected heights, dangerous heavy moving machinery, vibration, and walking on uneven terrain. R. 18. At step four, the ALJ found that Plaintiff could not perform any past relevant work from January 31, 2016 to September 30, 2017. R. 23-24. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could have performed, including cleaner, mail clerk, and cafeteria worker. R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. *Id.*

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, __U.S.__, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff argues that the matter should be remanded because the ALJ: (1) "cherry-picked" the records in her conclusion regarding Plaintiff's impairment of his right upper extremity; (2) "played medical doctor" in interpreting Plaintiff's medical records; (3) failed to evaluate whether Plaintiff equaled listing 1.04A; and (4) ignored Plaintiff's functional limitations which would show

4

he could not perform light work.

"Cherry-picking"

First, Plaintiff argues that in his testimony before the ALJ, he noted that he had pain in his right shoulder, numbness in his right hand, electric shock sensations running down his right arm and fingers, and tingling in his right hand fingers, following his neck surgery. Plaintiff posits that in her findings, the ALJ did not mention the symptoms concerning Plaintiff's right hand and fingers nor the pain he continued to experience in his right shoulder, but did state that Plaintiff was evaluated for right shoulder pain and had reduced strength in his biceps and triceps as well as a questionable fracture of the scapula. The ALJ noted that Plaintiff's MRI of his right shoulder in March of 2016, was negative for a fracture. In her RFC formulation, the ALJ did not assess any limitations for Plaintiff's right shoulder or right hand numbness. The ALJ did not note that the MRI findings were consistent with a SLAP type tear in Plaintiff's right shoulder. Plaintiff argues this is impermissible "cherry picking" of the medical evidence contained in the record. Citing to *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012), Plaintiff notes "[a]n ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." *Id*. The Commissioner disagrees noting that the ALJ referenced Plaintiff's 2016 medical record which reported that Plaintiff was experiencing neck and shoulder pain at a severity level of 7/10. As noted by the Commissioner, the ALJ went on to state that Plaintiff was controlling this pain with Aleve. The ALJ further found that in 2017, Plaintiff reported significant pain control with medications without side effects and retained 5/5 muscle strength. The ALJ took into account Plaintiff's July 2017 annual physical exam where Plaintiff made no report of unmanageable pain. The ALJ also noted that a week prior to his annual exam, Plaintiff was seen for a medication follow-up where he reported significant pain improvement and no adverse side effects. As to Plaintiff's criticism of the ALJ's findings regarding his right hand issues, the Commissioner notes that while Plaintiff alleges that the ALJ failed to acknowledge his residual numbness in this right hand following surgery, Plaintiff fails to cite to any treatment *not* considered by the ALJ.

"'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.'" *Baldwin v. Berryhill*, 746 Fed. Appx. 580, 583 (7th Cir. 2018) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). This standard, however, does not require an ALJ to examine "every piece of evidence in the record," *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020), but rather warns against an ALJ ignoring "an entire line of evidence," or "overlook[ing] entire swaths of [evidence]." *Id.* at 466-67. Such was not the case here. As pointed out by the Commissioner, the ALJ did discuss in her ruling Plaintiff's limitations as well as pain and how Plaintiff was being treated. The Commissioner also noted that the medical records show that a year after his surgery, Plaintiff was in no acute distress, had a normal neurological examination and experienced full range of motion in his neck and extremities. Additionally, there was no further treatment of Plaintiff's hand numbness for the ALJ to consider. In her findings, the ALJ did set forth Plaintiff's right shoulder pain, reduced range of motion, tenderness, decrease in strength, joint space narrowing, possible facture of the glenoid cavity of the scapula, and related treatment and follow-ups. The ALJ noted, as supported by the medical records, that the MRI of Plaintiff's right shoulder taken in March of 2016, confirmed no fracture. Other records, however, showed a SLAP type 2B tear in Plaintiff's right shoulder. While the ALJ did not indicate the SLAP tear in

her findings, she did set out Plaintiff's care and treatment following the MRI, including his reduced range of movement in his spine and shoulder, tenderness in his right shoulder, and an injection in his right shoulder joint. As to Plaintiff's argument regarding the ALJ ignoring his right hand issues, as noted above, the record does not support a conclusion that Plaintiff was treated for any significant right hand issues. "'The question we consider on review is not whether an alternative finding may also be supported by substantial evidence. Rather, we ask whether the final agency finding…is supported by substantial evidence.'" *Norman v. Barryhill*, No. 18 C 5746, 2019 WL 2525867, at * 4 (N.D. Ill. June 19, 2019) (quoting *Schloesser v. Berryhill*, 870 F. 3d 712, 721 (7th Cir. 2017)).

Taking the record as a whole, the Court cannot say that the ALJ "cherry-picked" facts to support her finding of non-disability. The ALJ did not ignore entire lines or swaths of evidence to reach her conclusions in either her evaluation of Plaintiff's residual right hand numbness or her assessment of Plaintiff's right shoulder injury.

"Playing medical doctor"

Next, Plaintiff argues the ALJ "played medical doctor" in stating that Plaintiff's MRI results confirmed no right shoulder fracture, and in assuming that Plaintiff's SLAP tear was not a significant medical finding, citing *Graf v. Berryhill*, No. 17 CV 50086, 2018 WL 6018604 (N.D. Ill. Nov. 16, 2018) (the court's finding that the ALJ impermissibly "played doctor" was supported "by the fact that no medical opinions supported the ALJ's specific analyses of the medical record or her specific RFC findings"). This is the extent of Plaintiff's argument. The Court does not agree that the ALJ's statement that Plaintiff's MRI did not show a right shoulder fracture constitutes "playing doctor." The PA report, as cited by the ALJ, noted that the March 2016 MRI confirmed no right shoulder fracture. The OrthoIllinois imaging report noted "SLAP type 2B tear associated with mild glenohumeral arthropathy." R. 444. While the ALJ did not note the report indicating the SLAP tear, the ALJ did set out Plaintiff's follow-up from the MRI, including Plaintiff's complaint of right shoulder pain and the subsequent treatment. In *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018), the court found that the ALJ impermissibly "played doctor" by "interpreting the MRI results himself" and stating that plaintiff's MRI results "were 'consistent' with [plaintiff's] impairments and then based his assessment of her residual functional capacity after 'considering the recent MRIs.'" *Id*. Nowhere in the ALJ's findings here does the ALJ "interpret" Plaintiff's MRI (or any of Plaintiff's medical records). Additionally, the ALJ's findings do not support the argument that the ALJ assumed that Plaintiff's SLAP tear was not a "significant medical finding." The ALJ did consider Plaintiff's right shoulder limitations and found that following treatment, including physical therapy, injections, and eventually surgery, Plaintiff's symptoms improved. The ALJ's findings do not support an argument that the ALJ "played doctor" concerning Plaintiff's right shoulder injury.

Listing 1.04A

Plaintiff argues the ALJ failed to evaluate whether Plaintiff equaled listing 1.04A. Listing 1.04A includes disorders of the spine and provides, in part, that it is met where there is "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

accompanied by sensory or reflex loss and, if there is involvement of the lower back, a positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Supbt. P, App. 1, § 1.04A.

Plaintiff argues he equals listing 1.04A. He argues the medical records show his condition, pre-surgery, was "consistent with" nerve root compression or muscle weakness. He further supports his position with Dr. Braaksma's diagnosis of radiculopathy of the cervical region, cervicalgia, and weakness of the right upper extremity. Plaintiff's March 2016 MRI also showed multilevel spondylosis and cervical herniations. These symptoms contributed to Plaintiff's muscle weakness. However, the records do not show that any doctor, including Dr. Braaksma, indicated that Plaintiff's condition during this time met listing 1.04A. Moreover, Plaintiff admits that his symptoms were addressed with his spinal fusion surgery. As argued by the Commissioner, imaging following the surgery showed evidence of a successful surgery, and by July 2016, Plaintiff reported full strength in his arms, intact sensations, and full and equal reflexes. The Court agrees with the Commissioner that the ALJ properly considered that Plaintiff's presentation to his medical providers did not meet listing 1.04A, either before or after his spinal surgery.

Plaintiff attempts to further argue he "equals" the listing with his residual pain following his surgery and his necessary pain medications. The Code provides guidance on how the Court should address the "medical equivalent to a listed impairment." Under 20 C.F.R. § 404.1529(d)(3), it is inappropriate to "substitute…allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of…impairment(s) to that of a listed impairment." This regulation does not require that the ALJ find that Plaintiff "was missing objective medical evidence before [she] excluded a discussion of [his] symptoms and conclude [he] was not disabled. The regulation provides that an ALJ will not consider the individual's own allegations if the medical evidence demonstrates a lack of severity." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Thus, Plaintiff's argument that the ALJ should have considered his allegations of pain (and subsequent need to medicate for pain) in order to raise the severity of his impairment to equal the listing, is without merit.

Additionally, the Court dispenses of Plaintiff's argument that "the ALJ should have obtained updated medical expert testimony on this issue." "The Seventh Circuit generally does not disturb a reasoned judgment of the Commissioner on how much evidence to gather[;] [and] [m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Hiatt v. Saul*, No. 3:19-cv-00182, 2020 WL 1910346, at * 4 (N.D. Ind. April 20, 2020). Plaintiff's undeveloped and speculative comment does not persuade the Court that additional medical evidence would have changed the course of the ALJ's ruling. Further, the Court agrees with the Commissioner that the record included sufficient medical evidence, including opinions of two state-agency physicians, to support the conclusion that Plaintiff failed to meet or equal listing 1.04A.

Plaintiff's functional limitations

Finally, Plaintiff posits a very brief argument that the ALJ ignored portions of evidence that could support additional functional limitations which would show that Plaintiff could not perform light work. Plaintiff suggests that additional limitations in "reaching" and "handling" could narrow the available jobs; and more consideration to his neck condition and need for

prescription pain medication could impact his ability to perform light work.

Of the two state-agency medical consultants, the ALJ gave the greater weight to Dr. Barnes who opined that Plaintiff could perform light work with only occasional climbing, kneeling, crouching, and crawling and should avoid exposure to extreme cold, vibration, and walking or working on uneven terrain.[3] The ALJ also found that Dr. Barnes' opinion was "consistent with the overall record, including the claimant's imaging studies, examination findings, treatment regimen, and daily activities." There is nothing in the record that would indicate any inconsistencies in Dr. Barnes' opinion (and the ALJ's reliance thereof), nor does Plaintiff provide any substantive argument otherwise. Therefore, Plaintiff's argument regarding the insufficiency of findings regarding his work limitations is of no account. "[S]everely underdeveloped…arguments are waived." *Goss o.b.o. Goss v. Saul*, No. 1:19-cv-374-PPS, 2020 WL 4559171, at *4 n. 3 (N.D. Ind. 2020) (citing *Pike v. Colvin*, No. 09 C 4351, 2015 WL 6756264, at * 3 (N.D. Ill. Nov. 5, 2015) (stating perfunctory and underdeveloped arguments in social security appeals are waived)).

Here, the ALJ concluded that Plaintiff's symptoms were appropriately managed, he experienced full strength in his extremities, intact sensations, and good range of motion in his neck and joints. Further, the ALJ reasonably found that Plaintiff had an RFC to perform light work, within certain restrictions. The ALJ's conclusions and findings are supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [11] is denied and the Commissioner's motion for summary judgment [17] is granted.

Date: 10/28/2021  ENTER:

_Margaret J. Schneider_
United States Magistrate Judge

---

[3] The other state-agency physician, Dr. Soler, gave a similar opinion, but the ALJ noted that Dr. Soler did not review later submitted evidence and did not include environmental condition limitations.

8